FILED
2017 Oct-06 PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ENATRA HALE, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:16-cv-00498-RDP |
| UNIVERSITY OF ALABAMA BOARD OF TRUSTEES, et al., | } |
| Defendants. | } |

## MEMORANDUM OPINION

This case is before the court on Defendant Dr. Andries J. Steyn's Corrected Partial Motion to Dismiss. (Doc. # 37). The parties have fully briefed the Motion to Dismiss (Docs. # 41, 44), and it is under submission. After careful review, and for the reasons explained below, the court concludes that the Motion to Dismiss is due to be granted.

### I.  Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most

favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**II.     Analysis**

Defendant Steyn seeks partial or full dismissal of all five claims asserted in Plaintiff's Second Amended Complaint. The court discusses each of Steyn's arguments below, in turn.

2

### A. Plaintiff's Title VII Claims Against Defendant Steyn are Due to be Dismissed

Defendant Steyn argues that Plaintiff's claims against him under Title VII of the Civil Rights Act of 1964 ("Title VII") are due to be dismissed, regardless of whether the claims are brought against him in his individual or official capacity. (Doc. # 37 at 6-7). The court agrees.

Plaintiff's Title VII claims against Defendant Steyn in his individual capacity fail to state a claim for relief. "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the [Civil Rights Act of 1964]." *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)). Because "[i]ndividual capacity suits under Title VII are [ ] inappropriate," Plaintiff's Title VII claims against Steyn in Counts One, Two, and Three of the Second Amended Complaint are due to be dismissed to the extent they raise individual capacity claims against Steyn. *Busby*, 931 F.2d at 772.

As to any Title VII claim against Steyn in his official capacity, those Title VII claims are also due to be dismissed because they are duplicative of Plaintiff's claims against Defendant University of Alabama Board of Trustees ("Board of Trustees"). Official capacity claims against an individual defendant are unnecessary when the defendant's employer is a named defendant. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1270 (11th Cir. 2005) (affirming summary judgment on official capacity claims against police officers when their employer was also a defendant).

### B. Plaintiff's Deceit and Misrepresentation Claim Against Defendant Steyn in His Official Capacity is Due to be Dismissed

Defendant Steyn argues that he cannot be sued in his official capacity for deceit and misrepresentation because state agencies are officially immune from Alabama state law claims. (Doc. # 37 at 7-8). Plaintiff responds that Steyn is not entitled to immunity for this claim in his official or individual capacity because the Second Amended Complaint alleges that he willfully deceived Plaintiff about the reason for her termination. (Doc. # 41 at 6-7). Steyn replies that the deceit and misrepresentation claim is due to go forward against him in his individual capacity only, not in his official capacity. (Doc. # 44 at 4-5). Defendant Steyn is correct.

Under Article I, Section 14 of the Alabama Constitution, "the State of Alabama shall never be made a defendant in any court of law or equity." This constitutional provision provides "a 'nearly impregnable' and 'almost invincible' 'wall' that provides the State an unwaivable, absolute immunity from suit [ ] in any court." *Ex parte Town of Lowndesboro*, 950 So. 2d 1203, 1206 (Ala. 2006) (citations omitted). Additionally, under § 14, state agencies are "absolutely immune from suit." *Lyons v. River Road Constr., Inc.*, 858 So. 2d 257, 261 (Ala. 2003). The Board of Trustees is a state agency entitled to governmental immunity under the Alabama Constitution. *Hutchinson v. Bd. of Trs. of Univ. of Ala.*, 256 So. 2d 281, 283 (Ala. 1971) (affirming that the Board of Trustees was entitled to governmental immunity); *Freeman v. Bd. of Trs. of Univ. of Ala.*, 2015 WL 3604197, at *5 (N.D. Ala. June 8, 2015); *Harris v. Bd. of Trustees Univ. of Ala.*, 846 F. Supp. 2d 1223, 1235 (N.D. Ala. 2012).

Moreover, a plaintiff cannot indirectly sue the State of Alabama by suing an officer in his or her official capacity. *Ex parte Bessemer Bd. of Educ.*, 68 So. 3d 782, 789 (Ala. 2011) (citations omitted). "Indeed, it is well established that actions for damages against State agents in their official or representative capacities are considered actions to recover money from the

State and are barred by [governmental] immunity under § 14." *Ex parte Moulton*, 116 So. 3d 1119, 1140 (Ala. 2013) (collecting cases). *See also id.* at 1141 (restating the "exception" to governmental immunity for suits brought against state officials premised on actions committed "fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law" to clarify that the exception does not allow for damages suits against state officials in their official capacities). Here, Plaintiff seeks monetary compensatory and punitive damages for Steyn's deceit and misrepresentation. (Doc. # 23 at ¶ 50). She does not seek injunctive relief against Steyn in his official capacity for the deceit and misrepresentation. (*See id.*). Therefore, Count Four of the Second Amended Complaint is due to be dismissed, to the extent it presents a claim against Steyn in his official capacity, due to governmental immunity. *See Moulton*, 116 So. 3d at 1140-41.

### C. Plaintiff's Official Capacity First Amendment Retaliation Claim Against Defendant Steyn is Due to be Dismissed

With regard to Count Five of the Second Amended Complaint, Defendant Steyn first argues that he cannot be sued on this ground in his official capacity because the Board of Trustees is entitled to Eleventh Amendment immunity from this 42 U.S.C. § 1983 claim. (Doc. # 37 at 8-10). The court agrees.

"States and state officials acting in their official capacities cannot be sued for money damages under § 1983 because they are not considered to be 'persons' for the purposes of the statute." *Carr v. Bd. of Regents of Univ. Sys. of Ga.*, 249 F. App'x 146, 148 (11th Cir. 2007) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Likewise, the Eleventh Amendment bars suit against an "arm of the State," including "agents and instrumentalities of the State." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (*en banc*) (plurality opinion). And, a suit against a state official in his or her official capacity is treated as a suit against the

entity that employs the official. *Graham*, 473 U.S. at 166. An Alabama state agency is entirely immune from suit under § 1983 because Congress has not abrogated Eleventh Amendment immunity for § 1983 actions and the state of Alabama has not waived its Eleventh Amendment immunity. *Strickland v. Bd. of Trs. of Univ. of Ala.*, 2014 WL 6749019, at *2 (N.D. Ala. Dec. 1, 2014) (citing *Will*, 491 U.S. at 66, and *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).

The Board of Trustees is an arm of the state which qualifies for Eleventh Amendment immunity from § 1983 claims. *E.g.*, *Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006); *Harris*, 846 F. Supp. 2d at 1233. Therefore, to the extent Plaintiff sues Steyn in his official capacity, she is suing an entity entitled to immunity. Likewise, Steyn is not a "person" suable under § 1983 in his official capacity because he is an official of a state entity. *See Carr*, 249 F. App'x at 148. Therefore, Plaintiff's § 1983 First Amendment retaliation claim against Defendant Steyn is due to be dismissed to the extent Steyn is being sued in his official capacity.[1]

### D. Plaintiff's First Amendment Retaliation Claim Against Steyn Fails to State a Violation of Her First Amendment Rights

With regard to Plaintiff's First Amendment retaliation claim, Defendant Steyn argues that the claim must be dismissed because "Plaintiff did not engage in speech as a citizen on a matter of public concern." (Doc. # 37 at 12). Plaintiff responds that her complaints about the disposal

---

[1] Defendant Steyn argues that the rule from *Ex parte Young*, 209 U.S. 123 (1908), does not apply to allow Plaintiff to seek prospective injunctive relief from him in his official capacity because Plaintiff's First Amendment retaliation claim alleges no ongoing violation of federal law. (Doc. # 37 at 10-12). As an initial matter, a careful review of the Second Amended Complaint reveals that Plaintiff does not seek injunctive relief for the alleged § 1983 violation. (Doc. # 23 at 13) (requesting an injunction to prevent Defendants from violating Title VII). Moreover, to the extent Plaintiff seeks a declaratory judgment against the Board of Trustees and Steyn in his official capacity relating to the alleged First Amendment retaliation, Defendants are entitled to Eleventh Amendment immunity from such a declaratory judgment because Plaintiff has not alleged an ongoing policy or practice of First Amendment retaliation. *See Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1219-20 (11th Cir. 2000) ("*Ex parte Young* applies to cases in which the relief against the state official directly ends the violation of federal law, as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or simply to compensate the victim.").

and handling of waste contaminated with tuberculosis related to the public interest because the waste disposal affected the health of individuals on the campus of the University of Alabama-Birmingham ("UAB") and the general public. (Doc. # 41 at 8-9). The court begins its review of this claim by discussing what Plaintiff has actually alleged about her own speech.

1. **The Allegations About Plaintiff's Job Duties and Speech**

According to the Second Amended Complaint, Plaintiff worked as a research assistant at the Tuberculosis Bio-Containment Facility ("Containment Facility") in UAB's Department of Microbiology. (Doc. # 23 at ¶ 6). The Containment Facility "handled and maintained samples and cultures of active tuberculosis viruses." (*Id.* at ¶ 7). As a research assistant, Plaintiff (1) oversaw safety functions in the Containment Facility, (2) monitored the functioning of safety equipment in its laboratories, (3) ensured that hazardous materials were appropriately contained, stored, and disposed, (4) coordinated safety audits, (5) instructed students on safety protocols, and (6) informed other personnel about "safety rules and regulations." (*Id.* at ¶ 8).

In early 2012, Plaintiff began "expressing concerns" about violations of operating procedures in the Containment Facility. (*Id.* at ¶ 12). In January 2013, Plaintiff "noticed" that negative air pressure was not maintained in some of the rooms in the containment facility. (*Id.* at ¶ 13). According to Plaintiff, the air pressure issues posed health risks to her and other workers in the Containment Facility. (*Id.*). In July 2013, Plaintiff reported to Steyn and Elaine Broussard that another employee had violated safety protocols by "disposing of infectious materials in an unsafe manner, failing to properly contain infectious materials[,] and neglecting to comply with [Containment Facility] waste disposal protocol." (*Id.* at ¶¶ 14-16). Plaintiff informed Steyn of the safety violations "per laboratory policy." (*Id.* at ¶ 15). Plaintiff also asserts that she reported

the health and safety issues "out of concern for the safety of staff and students who occupied the building." (*Id.* at ¶ 52).

Steyn allegedly responded by demanding Plaintiff's removal from her job. (*Id.* at ¶ 17). Plaintiff then reported her safety concerns to the Occupational Safety and Health Administration ("OSHA"). (*Id.* at ¶ 18). In response, Plaintiff alleges that Defendants retaliated against her when Steyn demanded her resignation and sent her a harassing e-mail. (*Id.* at ¶ 54).

### 2. Analysis of Plaintiff's First Amendment Retaliation Claim

A state employee may not be terminated in retaliation for speech protected under the First Amendment. *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007). In addressing a First Amendment retaliation claim, the court first considers "(1) if the government employee spoke as an employee or citizen and (2) if the speech addressed an issue relating to the mission of the government employer or a matter of public concern." *Boyce v. Andrew*, 510 F.3d 1333, 1342 (11th Cir. 2007). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The "controlling factor" in determining whether an employee spoke as an employee or a citizen is whether the statement was made pursuant to the employee's official duties. *Alves v. Bd. of Regents of Univ. Sys. of Ga.*, 804 F.3d 1149, 1161 (11th Cir. 2015). Factors that may be considered in this analysis include "the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job." *Id.* The court must carefully apply *Garcetti*'s "exception to First Amendment protection" to only exempt "speech that an employee made in accordance with or in furtherance of the ordinary responsibilities of her employment, not merely speech that concerns the ordinary

responsibilities of her employment." *Id.* at 1162 (discussing the limiting principles on *Garcetti* established in *Lane v. Franks*, 134 S. Ct. 2369 (2014)).

In *Alves*, the Eleventh Circuit addressed a First Amendment retaliation claim filed by five employees of a university counseling center. *Id.* at 1153. The employees submitted a memorandum to university officials about the "poor leadership and mismanagement" of the counseling center's director. *Id.* The Eleventh Circuit held that the employees spoke as employees, not citizens, when submitting the memorandum. *Id.* at 1165. In support, the *Alves* opinion recounted that the memorandum addressed how the director's conduct harmed their abilities to supervise employees, recruit interns and candidates, and provide counseling services. *Id.* at 1164. Thus, the complaints in the memorandum related to the employees' ordinary duties. *Id.* The Eleventh Circuit concluded that the employees wrote the memorandum to correct the mismanagement that "interfered" with their job performance. *Id.* at 1164-65. Therefore, because the employees submitted the memorandum "in the course of carrying out their daily activities," the memorandum was submitted pursuant to the employees' duties and constituted employee speech. *See id.*

Here, the allegations of Plaintiff's Second Amended Complaint clearly reveals that she spoke as an employee -- not a citizen -- when she complained about safety deficiencies at the Containment Facility. Plaintiff's complaints addressed issues related to her responsibilities as a research assistant, which included overseeing safety functions, ensuring the safe disposal of hazardous materials, monitoring the operation of safety equipment, and informing other employees about safety rules and regulations. (Doc. # 23 at ¶ 8). Moreover, Plaintiff states that she reported the safety violations to Defendant Steyn "per laboratory policy," a clear indication that she made the report in furtherance of her responsibilities. (*Id.* at ¶ 15). Notably, Plaintiff's

9

reports to Steyn and Broussard occurred in her workplace and concerned a subject matter of her employment – enforcing the Containment Facility's safety standards. *See Alves*, 804 F.3d at 1161. Both of these factors weigh in favor of viewing Plaintiff's complaints to Steyn and Broussard as employee speech. Plaintiff's statements to Steyn, Broussard, and OSHA are similar to those at issue in *Alves* because she complained about how the conduct of another employee interfered with her job duties. *Cf. id.* at 1164-65. (*See also* Doc. # 23 at ¶¶ 14-16, 18). In light of Plaintiff's allegations about her job duties as a research assistant, the court concludes that she presented her complaints to Steyn, Broussard, and OSHA in accordance with and in furtherance of her ordinary responsibilities. *Alves*, 804 F.3d at 1162. Thus, Plaintiff spoke as an employee when she presented those complaints, and she is not entitled to First Amendment protection for those statements. *Garcetti*, 547 U.S. at 421. Count Five against Steyn is thus due to be dismissed.[2]

---

[2] The court need not decide -- and does not decide -- whether Plaintiff's alleged speech addressed a matter of public concern. Defendant Steyn correctly argues that this inquiry centers on whether the "main thrust" of Plaintiff's comments was to raise an issue of public concern or further her private interests. *Alves*, 804 F.3d at 1162. Plaintiff correctly responds, though, that speech relating to public safety issues generally is held to involve matters of public concern, rather than merely matters of private interest. *See Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) (holding that an employee's speech on behalf of a union-like organization with co-workers and supervisors involved a matter of public concern because the organization sought to improve safety for children, and "speech relating to the safety of the public involves a matter of public concern"). In addition, the form and context of Plaintiff's alleged complaints do not definitively indicate that she made the statements to further her private interests. While she did not discuss her concerns with the media or the general public, she reported her concerns to OSHA, an outside regulatory agency. (Doc. # 23 at ¶ 18). *See also Alves*, 804 F.3d at 1162 (stating that an employee's attempts to make her concerns public is a relevant, but not dispositive, factor in determining whether the speech at issue addressed a matter of public concern). Finally, the court must accept Plaintiff's allegation that she reported the safety issues out of concern for others in the building as true at this stage of the proceedings. (Doc. # 23 at ¶ 52). But, because Plaintiff's allegations clearly reveal that she spoke as an employee when reporting the safety problems, the court need not decide the more difficult question of whether her complaints addressed a matter of public or private concern.

Plaintiff has not responded to Steyn's argument for qualified immunity. (*See generally* Doc. # 41). Thus, Plaintiff has presented no basis to dispute Steyn's assertion that the actions he allegedly took were within his discretionary authority. (*See* Doc. # 23 at ¶¶ 5, 41) (alleging that Steyn was the supervisor and director of the Containment Facility where Hale worked and that he had the authority "to take adverse tangible employment action[s]" against her). And, as discussed above, Plaintiff has not pled a violation of her First Amendment rights because she spoke as an employee when making the complaints at issue. *Garcetti*, 547 U.S. at 421. Therefore, Defendant Steyn is also entitled to qualified immunity in his individual capacity from Plaintiff's First Amendment retaliation claim.

**III.     Conclusion**

For the reasons explained above, Defendant Steyn's Motion to Dismiss (Doc. # 23) is due to be granted.  Plaintiff's Title VII claims against Steyn in Counts One, Two, and Three of the Second Amended Complaint are due to be dismissed in his individual and official capacities.  Plaintiff's deceit and misrepresentation claim against Steyn in Count Four is due to be dismissed to the extent it is raised against him in his official capacity.  Plaintiff's § 1983 First Amendment retaliation claim against Steyn in Count Five is due to be dismissed in his individual and official capacities.  An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this October 6, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE